UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| UNITED STATES OF AMERICA | Case No. 24-mj-230-01-TSM |
|---|---|
| v. | |
| Luis Felipe Xiloj-Ambrocio | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT**

I, Blake Thilkey, being duly sworn, state as follows:

**Introduction and Agent Background**

1. I am a Border Patrol Agent with the United States Department of Homeland Security, United States Border Patrol ("Border Patrol"). I have been with the Border Patrol for more than 14 years. I am currently assigned to the Beecher Falls Station in Canaan, Vermont. I have participated in numerous alien-smuggling investigations and participated in numerous drug investigations. I have been involved in the application for and execution of numerous search and arrest warrants. Through my experience as a federal agent, I have participated in numerous federal investigations relating to alien smuggling and to the possession of controlled substances. I have also conducted, participated in, and/or directed surveillance operations and the execution of search warrants, resulting in seizures of controlled substances, large amounts of United States currency, receipts, computers, communication, and other electronic devices. I have also participated in interviews with aliens who illegally entered the United States, both independently and as part of smuggling operations, and I am familiar with many of the methods smuggling organizations use to assist aliens in illegally entering the United States and to transport them in

1

furtherance of their illegal entry.

2. 18 U.S.C. § 1357 and 8 CFR § 287.5(c) gives Border Patrol agents like myself the authority to arrest individuals for illegal entry.

3. This affidavit is offered to demonstrate that probable cause exists to believe that Luis Felipe XILOJ-AMBROCIO (XILOJ-AMBROCIO), an alien, violated 8 U.S.C. § 1325 by entering the United States at any time or place other than as designated by immigration officers, and by eluding examination or inspection by immigration officers.

4. The information contained in this affidavit is based upon my training and experience and my own investigation and that of other law enforcement officers. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. This affidavit is meant to set forth probable cause and does not include every fact known to law enforcement about the events described below.

**Relevant Statute**

5. 8 U.S.C. § 1325 provides, in pertinent part, that that it is unlawful for any alien [to]…enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers, or … elude[] examination or inspection by immigration officers."

**Probable Cause**

6. On September 9, 2024, at approximately 8:25 a.m., Border Patrol dispatch advised agents of the Beecher Falls Station that a piece of remote surveillance equipment detected and photographed images of one subject walking in the area at 8:24 a.m. This area is remote and undeveloped, located south of the Pittsburg Port of Entry in the northern most part of New Hampshire near the United States/Canada International Border, and in close proximity to US Route 3.

7. Upon receiving the dispatch at 8:25 a.m., agents from the Beecher Falls Border Patrol Station, including Agent Guthrie Peet, reviewed the image and observed what appeared to be one male subject wearing a black and red hat and wearing dark clothing, specifically: black athletic pants with vertical blue stripes, a black hooded sweatshirt with possibly a backpack underneath the sweatshirt, and dirty white sneakers, exiting the thick woods and walking towards US Route 3. The images showed the male travelling alone, on foot, and crouching down at times, as if to evade detection.

8. US Route 3 is the only northerly and southerly paved road in the area of the Pittsburg Port of Entry. The location of the remote surveillance equipment is approximately a 30-minute drive from where Agent Peet was located when he received the dispatch at 8:25 A.M.. Upon receiving the dispatch at 8:25 A.M., Agent Peet immediately responded to the area of the remote surveillance equipment by driving northbound on US Route 3.

9. Approximately fifteen minutes into his travel northbound, Agent Peet observed a red Acura RSX bearing Massachusetts registration 4LZJ44,(Acura) traveling southbound on US Route 3. The Acura was registered to the driver, Esdras Aaron CALEL-CUMES. It should be noted that Agent Peet did not observe any other vehicles traveling within the five miles approaching the location of the Acura. The location where Agent Peet observed the Acura was consistent in time and location (about halfway) between where he was when he received the dispatch at 8:25 A.M. and where the remote surveillance equipment was located. Additionally, Agent Peet learned via radio communication with the Pittsburg Port of Entry that no vehicles had passed the U.S./Canada port of entry at Pittsburg, as the border had only been opened since 8:00 A.M. and no vehicles had crossed in a southerly direction on U.S. Route 3.

10. As the Acura passed Agent Peet's vehicle, Agent Peet observed two adult males

seated in the front of the Acura. The individual in the front passenger seat was wearing dark clothing like that of the individual who was captured on image. At this time, Agent Peet turned around to catch back up with the Acura and a vehicle stop was conducted. Agent Peet also called in his location and observations for back-up.

11. Agent Peet identified himself to the two men in the vehicle who did not respond. Agent Peet asked the two men if they spoke English, to which the driver responded in English, "yes, I understand English." At that point, a female in the backseat who was previously lying down undetected under a blanket removed the blanket and sat up in the vehicle.

12. Agent Peet encountered three people in the vehicle, later identified as follows:

- Esdras Aaron CALEL-CUMES, DOB: ▮▮▮▮▮▮▮▮, Country of Birth: Guatemala (Driver);

- Luis Felipe XILOJ-AMBROCIO, DOB: ▮▮▮▮▮▮▮▮, Country of Birth: Guatemala (Front Passenger); *and*

- Nayelis Carolina MARTINEZ-ARRIAS (MARTINEZ-ARRIAS), DOB: ▮▮▮▮▮▮▮▮, Country of Birth: Venezuela (Rear Passenger).

13. Agent Peet asked the three individuals if they were U.S. Citizens; and each responded with their country of birth, as described in the previous paragraph.

14. Agent Peet asked if the individuals were present in the United States legally or illegally and CALEL-CUMES shrugged and stated he didn't know if he wanted to answer that. Agent Peet then asked CALEL-CUMES if he had picked up XILOJ-AMBROCIO on the side of the road, and CALEL-CUMES stated that he and MARTINEZ-ARRIAS had driven up to the border and picked up XILOJ-ABROCIO. CALEL-CUMES told Agent Peet that MARTINEZ-ARRIAS was his girlfriend, and they had driven up together. Agent Peet asked CALEL-

4

CUMES if XILOJ-AMBROCIO had crossed into the United States illegally from Canada prior to being picked up, and CALEL-CUMES told Agent Peet that XILOJ-AMBROCIO had crossed the border illegally through the woods, and that they were there to pick him up. Agent Peet asked XILOJ-AMBROCIO in Spanish[1] if he had crossed the border illegally, and he had stated that he had crossed the border through the woods by himself. At this time, Agent Peet collected identification documents from the three passengers. CALEL-CUMES provided Agent Peet with a Massachusetts driver's license, while MARTINEZ-ARRIAS and XILOJ-ABROCIO provided their foreign passports.

15. During this interaction, Agent Peet noticed that XILOJ-AMBROCIO was wearing a black t-shirt and black shorts but had a red and black hat and a pair of black athletic pants with vertical blue striping sitting on his lap, which was consistent with the clothing worn by the male in the remote surveillance image. The athletic pants were also covered in dirt, brush, and grass as would be consistent with someone who had just walked through thick woods.

16. All three subjects were transported to the Beecher Falls Border Patrol Station.

17. At the station, a record check on CALEL-CUMES revealed that he has no legal status in the United Sates. Additionally, a record check on XILOJ-AMBROCIO revealed that he has no legal status in the United States. A record check on MARTINEZ-ARRIAS revealed that she is a citizen of Venezuela who is illegally entered the United States, but is awaiting an immigration court date ins February of 2025.

18. At the station, Border Patrol Agents provided MARTINEZ-ARRIAS with her *Miranda* rights, and she agreed to speak with Border Patrol Agents. The interview was recorded, and Border Patrol Agents used a Spanish interpreter through a remote translation service to

---

[1] Note: Agent Peet is not a fluent Spanish speaker and has limited knowledge of Spanish.

facilitate the interview. MARTINEZ-ARRIAS indicated that she and her boyfriend, CALEL-CUMES, drove from Boston to the area, and that she fell asleep on the ride. She admitted that CALEL-CUMES had picked up XILOJ-AMBROCIO, whom she claimed that she did not know. She also gave consent to have her cell phone, which was recovered from her person, downloaded.

19. During a search of her cell phone content, a WhatsApp contact was discovered matching the XILOJ-AMBROCIO who MARTINEZ-ARRIAS claimed not to know. Border Patrol agents re-approached MARTINEZ-ARRIAS and asked her about this contact information, at which time she indicated that her boyfriend CALEL-CUMES used her phone.

## Conclusion and Request

20. Based on the foregoing, I believe that there is probable cause to believe that Luis Felipe XILOJ-AMBROCIO, a national of Guatamala, violated 8 U.S.C. § 1325 by entering the United States at any time or place other than as designated by immigration officers, and by eluding examination or inspection by immigration officers.

/s/ Blake Thilkey
Blake Thilkey
Border Patrol Agent
Department of Homeland Security

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: Sept. 10, 2024
Time: 7:43 AM

/s/ Talesha L. Saint-Marc
Talesha L. Saint-Marc
United States Magistrate Judge

6